UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DONNA GOULD,

        Plaintiff,

       v.                                                 Case No. 18-C-1282

MONARCH RECOVERY MANAGEMENT, INC.
and JOHN DOES,

        Defendants.

## DECISION AND ORDER ON ATTORNEYS' FEES

Plaintiff Donna Gould commenced this Fair Debt Collection Practices Act (FDCPA) action against Defendant Monarch Recovery Management, Inc., on August 20, 2018. Gould accepted Monarch's offer of settlement for $1,001.00 in June 2019. The case is now before the court on Gould's motion for attorneys' fees and costs. Gould seeks $57,073.37 in attorneys' fees and $1,503.21 in costs. For the following reasons, Gould's motion for an award of attorneys' fees and costs will be granted but for a substantially reduced amount.

## BACKGROUND

Gould brought this action against Monarch on a claim that Monarch had violated the FDCPA by sending her a letter regarding her debt of $932.30 owed to First Premier Bank. Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). Toward that end, the FDCPA bars a debt collector's

use of: (a) harassing, oppressive, and abusive conduct; (b) false, deceptive, or misleading means or representations; and (c) unfair or unconscionable means. 15 U.S.C. §§ 1692d, 1692e, 1692f.

In this case, Gould alleged that Monarch had violated the FDCPA by sending her a letter that included the statements "Total Balance as of 11 SEP 2017: $932.30" and "As of the date of this letter, you owe $932.30." Compl., Ex. A, Dkt. No. 1-1. The letter was sent in an effort to comply with the FDCPA, which requires the debt collector at the inception of the collection process to provide certain information to the consumer/debtor, including the amount of the debt; the name of the creditor to whom it is owed; a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector; and an offer to provide verification of the debt, if any portion is disputed, and the name of the original creditor, if different from the current creditor, upon request. 15 U.S.C. § 1692g(a). Gould claimed that the letter violated the FDCPA because the statement was false, deceptive, or misleading in violation of § 1692e and failed to state the amount of the debt in violation of § 1692g(a)(1).

In making this claim, however, Gould was not saying that she did not owe the full $932.30 (which Monarch offered to discount by 35% to $606 in order to settle the matter). If she had disputed either the validity of the debt or the amount, the letter informed Gould that Monarch would provide her written verification. But Gould disputed neither. Instead, Gould's claim was that by stating her balance "as of" the date of the letter, Monarch had falsely suggested that the amount of the debt was subject to change, that it could increase due to interest or late charges. Gould alleged that, contrary to the impression left by the letter, the debt was "static" and would never increase with the passage of time. Compl., Dkt. No. 1, ¶ 32. Gould claimed that the letter was therefore "materially misleading to the unsophisticated consumer as it creates a false sense of

2

Case 1:18-cv-01282-WCG   Filed 11/10/20   Page 2 of 15   Document 57

urgency that if the Debt is not promptly paid it will increase substantially and without notice." *Id.* at ¶ 33.

In addition to actual damages, the FDCPA authorizes statutory damages up to $1,000. 15 U.S.C. § 1692k(a). Gould did not allege that she sustained any actual loss or injury as a result of the letter she received. As a result, the most she could get for her claim was $1,000. To obtain this amount, Gould retained attorneys whose billing rates range from $475 to $675 per hour. Of course, Gould did not agree to pay those rates herself. No sane person would agree to pay attorneys at such a rate to start a federal lawsuit to obtain at most $1,000. Successful FDCPA plaintiffs are entitled to recover "the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(3). Attorneys who handle FDCPA cases naturally look to this provision to recover their fees and costs. And when, as here, the claim is based upon the standard notice that the debt collector sends to the consumer in each of the accounts assigned for collection, attorneys who specialize in FDCPA cases generally file suit not just on behalf of the individual client who brought the letter to the attorney's attention, but to the entire class of consumers who received the letter, each of whom, whether confused or not, may be entitled to an award of up to $1,000. In class action cases, the FDCPA imposes liability on the debt collector for the total actual or statutory damages for each class member up to the lesser of $500,000 or one percent of the debt collector's net worth. 15 U.S.C. § 1692k(a)(2)(B). In class action litigation involving awards of up to a half million dollars, the rates such as those charged by Gould's attorneys might appear more reasonable.

Gould's attorneys initially filed her action as a putative class action. However, Gould filed a motion to withdraw her motion for class certification, which the court granted on March 6, 2019. Dkt. No. 19. Gould also filed a motion to compel discovery (Dkt. No. 17) and a motion in limine

3

(Dkt. No. 26) during the course of litigation. After Gould filed a motion for summary judgment as to liability (Dkt. No. 31), Monarch made an offer of judgment, which Gould accepted, for $1,001, one dollar more than the maximum statutory award Gould could receive on her claim. The offer also provided that the judgment would "include an amount for Plaintiff's reasonable attorneys' fees and costs in this matter. Dkt. No. 35. The offer further provided that "reasonable attorneys' fees and costs are to be agreed upon by the parties, or if the parties are unable to agree, to be determined by the Court on application by Plaintiff's counsel." *Id.*

In her motion for an award of attorneys' fees and costs, Gould stated that, based on the reasonable rates of the attorneys and the time spent litigating the case, attorneys' fees amounted to $58,070.67. In an exercise of billing judgment, Gould's counsel eliminated some time entries altogether, including all paralegal time, and took an "across-the-board" reduction of the remaining total of 25%. Dkt. No. 43 at 4. As a result, Gould initially sought an award of $46,618.11 in fees and $1,452.56 in costs based on 131.49 hours expended in the matter. Dkt. Nos. 42; 46-1 at 47. Gould then requested to supplement her motion for attorneys' fees and costs to include the fees and costs incurred in preparing a reply brief in support of her motion for attorneys' fees. Following a 40% reduction to the total amount of fees incurred in preparing the reply brief, Gould requests $9,782.80 in attorneys' fees and $50.65 in costs. In all, Gould seeks $57.073.37 in attorneys' fees and $1,503.21 in costs.

## ANALYSIS

"The touchstone for a district court's calculation of attorney's fees is the lodestar method, which is calculated by multiplying a reasonable hourly rate by the number of hours reasonably expended." *Gastineau v. Wright*, 592 F.3d 747, 748 (7th Cir. 2010). However, the analysis does not end there. "[T]he lodestar figure is just the 'starting point.'" *Thorncreek Apartments III, LLC*

4

*v. Mick*, 886 F.3d 626, 638 (7th Cir. 2018) (quoting *Estate of Enoch v. Tienor*, 570 F.3d 821, 823 (7th Cir. 2009)). Although it is presumptively reasonable, *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553–54 (2010), the lodestar figure may be excessive when "a plaintiff has achieved only partial or limited success," *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983).

In *Hensley*, the Court noted that, where the plaintiff has achieved only partial or limited success, "the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." *Id.* at 436. "The most critical factor," the Court explained in *Hensley*, "is the degree of success obtained." *Id.* Also important are the complexity of the legal issues involved and the public interest served by the case. *Paz v. Portfolio Recovery Associates, LLC*, 924 F.3d 949, 954 (7th Cir. 2019); *Schlacher v. Law Offices of Phillip J. Rotche & Assocs., P.C.*, 574 F.3d 852, 856–57 (7th Cir. 2009). Once the court has calculated the lodestar figure, it then must decide whether a further increase or reduction is appropriate based on its consideration of these factors.

In *Hensley*, the Court explained that "[t]here is no precise rule or formula for making these determinations." 461 U.S. at 436. The Seventh Circuit has cautioned that fee awards "should not be linked mechanically to a plaintiff's award." *Eddleman v. Switchcraft, Inc.*, 927 F.2d 316, 318 (7th Cir. 1991). But the court has also held that "a district court may consider proportionality as one factor in determining a reasonable fee." *Schlacher*, 574 F.3d at 857 (citing *Moriarty v. Svec*, 233 F.3d 955, 967–68 (7th Cir. 2000)). And where it chooses to reduce the lodestar figure, a district court may either attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success, complexity, or interest served.

5

*Hensley*, 461 U.S. at 436–37; *Paz*, 924 F.3d at 954; *Schlacher*, 574 F.3d at 856–57. With these principles in mind, the court will now turn to the issue before it.

### 1. Reasonable Hourly Rate

Gould requests an hourly rate of $475.00 for Attorney Andrew Thomasson, $575.00 for Attorney Francis Greene, and $675.00 for Attorney Philip Stern. Dkt. No. 46-1. An attorney's reasonable hourly rate is "derived from the market rate for the services rendered." *Pickett*, 664 F.3d at 640. To support the rate requested, Gould submitted a declaration from Attorney Trevor Pedersen showing that the requested rates are consistent with the market rates in the Eastern District of Wisconsin. *See* Dkt. No. 44-2. This court has previously considered the rates of Attorneys Thomasson, Greene, and Stern and found them to be appropriate market rates, *see Wakefield v. Financial Recoveries, Inc.*, No. 18-CV-173, Dkt. No. 34 (E.D. Wis. Feb. 7, 2019), but of course that determination is not binding on Monarch here. Moreover, in *Wakefield*, counsel had reduced the amount of attorney's fees requested to a total of $9,000 on a judgment of $1,501, which, based on the hours claimed, amounted to an effective rate of around $290 per hour. Nevertheless, Monarch does not challenge the rates charged by Gould's attorneys, and the court therefore finds that the requested rates are reasonable.

### 2. Reasonable Number of Hours Billed

Gould initially sought an award of attorneys' fees based on 131.49 hours of billable time dedicated to litigating this case, including preparation of the present motion for attorneys' fees and paralegal time. Dkt. Nos. 42 at 2; 46-1. This consists of 79.53 hours performed by Attorney Thomasson, 46.8 hours performed by Attorney Greene, 1.57 hours performed by Attorney Stern, and 3.59 hours performed by an individual named Grace LaPera. *Id.* Gould also seeks an award of attorneys' fees and costs based on an additional 30.86 hours spent replying to Monarch's

opposition to the motion for attorneys' fees. Dkt. No. 55-11. Monarch challenges the number of hours billed, arguing that Gould is seeking recovery for clerical work, duplicate entries, excessive time, and wasteful and unsuccessful motion practice.

At the outset, Gould argues that no adjustments should be made because Monarch has offered no evidence to support its argument that some of the time spent on various tasks was unreasonable. The argument betrays a misunderstanding of the manner in which attorney fee determinations are made. Parties generally do not conduct discovery and present evidence on attorneys' billing records. To do so would only increase the sense that in many cases fee disputes have become "the tail wagging the dog." *Ustrak v. Fairman*, 851 F.2d 983, 987 (7th Cir. 1988); *Baylor v. Richard Rubenstein & Assocs. PC*, 282 F. Supp. 3d 203, 208 (D.D.C. 2017). It would also ignore the Supreme Court's admonition in *Hensley* that "[a] request for attorney's fees should not result in a second major litigation." 461 U.S. at 437. The determination of a reasonable attorney's fee is entrusted to the discretion of the court, and the court is to exercise that discretion based on its review of the applicant's billing time records and its own understanding of the litigation. *Id.*

With that in mind, the court will first address the parties' dispute over paralegal time. Gould claims that, in exercising billing judgment, all time entries for paralegal work were eliminated. Dkt. No. 43 at 4. Gould nevertheless appears to dispute Monarch's request to remove some billing entries submitted by Grace LaPera. Dkt. No. 54 at 3. Gould does not identify Grace LaPera as a paralegal but does not dispute Monarch's characterization of her time as paralegal work. Dkt. No. 51 at 3. In keeping with Gould's initial assertion that she excluded all paralegal time, the court will exclude the time claimed for LaPera as listed in the initial billing statement (3.59 hours) and expended in connection with Gould's reply (0.53 hours).

7

Monarch asserts that several of the time entries submitted by Gould's legal team are duplicative. A review of the challenged time entries reveals that none of the entries identified by Monarch are improper. Monarch also argues that Gould's attorneys have improperly charged for administrative or clerical work. Courts do not allow fees for "those hours expended by counsel 'on tasks that are easily delegable to non-professional assistance.'" *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 553 (7th Cir. 1999) (citation omitted). "Courts have recognized that 'organizing file folders, preparing documents, copying documents, assembling filings, electronically filing documents, sending materials, docketing or "logging" case events into an internal case tracking system, and telephoning court reporters to be clerical' tasks for which fees should not be awarded." *Baier v. Rohr-Mont Motors, Inc.*, 175 F. Supp. 3d 1000, 1025 (N.D. Ill. 2016) (quoting *Delgado v. Vill. of Rosemont*, No. 03-C-7050, 2006 WL 3147695, at *2 (N.D. Ill. Oct. 31, 2006)). Gould agreed to withdraw her request for 0.15 hours for Mr. Green's time, 0.15 hours for Mr. Stern's time, and 1.31 hours for Mr. Thomasson's time in response to Monarch's challenge to time related to clerical work. The court finds that these reductions are appropriate and that the remaining time entries challenged by Monarch are for legal work properly performed by an attorney. Accordingly, the court will not further reduce Gould's fee request on this basis.

Next, Monarch contends that Gould's legal team spent an excessive amount of time on certain tasks. In particular, Monarch contends that the hours Gould's counsel spent preparing the motion for summary judgment, researching Gould's claims and reviewing her documents, drafting discovery requests and a subpoena, and traveling for depositions was excessive. The court will first address the parties' dispute over the time spent preparing Gould's motion for partial summary judgment. Monarch argues that the 21 hours allegedly expended by Gould to prepare this motion (Dkt. No. 31) should be reduced to 2.5 hours. Dkt. No. 51 at 9. The court agrees that the hours

8

awarded for this task should be reduced but not to the extent suggested by Monarch. The summary judgment brief was neither particularly novel nor complex. Considering the professed experience of Gould's counsel (*see* Dkt. No. 46 at 14), much of the research and argument was likely routine, and the basic form of the brief could be based on a familiar template. The accompanying proposed statement of fact (Dkt. No. 24) was less than three pages, reciting basic facts about Gould and the collection letter. The billing entries supporting the hours spent preparing the summary judgment filing are vague and offer no insight into why the summary judgment filings required 21 hours of work. As a result, the court will reduce the amount of time spent on the motion for partial summary judgment by 30%.

Aside from the hours related to preparing the motion for summary judgment, the court concludes that the time incurred researching Gould's claims and reviewing her materials, drafting a subpoena and discovery requests, and traveling for depositions was reasonably expended on the case. The court finds that the time spent performing these tasks was not excessive and a further reduction of fees on this basis is not required.

Monarch also asserts that Gould should not recover fees for time spent on her unnecessary motion practice. Gould filed a motion to certify a class on February 12, 2019. On March 5, 2019, Gould filed an unopposed motion to withdraw the motion to certify. On May 15, 2019, Gould advised that she would not file a renewed motion for class certification and would proceed on her individual claims. Monarch asserts that each billing entry associated with the motion for class certification should be removed because Gould could have prevailed on her individual FDCPA claims without filing the motion. Since the withdrawn motion had no bearing on the relief Gould ultimately obtained, the court finds that it is not appropriate to assess Monarch with the costs of preparing the motion.

In addition, Monarch argues that Gould should be precluded from recovering any fees associated with Gould's motion in limine, which alleged that Monarch failed to produce a representative for deposition. The court denied the motion on June 3, 2019. Although the motion was denied, it was not unreasonable for Gould to file the motion at the time. Therefore, the fee award will not be reduced on this basis.

Finally, the court will consider Gould's request for additional fees for its time preparing a reply brief to Monarch's opposition to its motion for attorneys' fees. Gould contends that counsel expended nearly 31 hours and $16,304.67 in fees to prepare this reply brief. Dkt. Nos. 54 at 11; 55-11 at 9. Gould proposes she will tolerate a 40% reduction of this amount, bringing her request for supplemental fees to $9,782.80. Dkt. No. 54 at 11. In determining whether an attorney's time on work related to a fee petition is reasonable, a court should determine "whether the hours claimed to have been expended on the fee request bear a rational relation to the number of hours spent litigating the merits." *Batt v. Micro Warehouse, Inc.*, 241 F.3d 891, 894 (7th Cir. 2001). The fees supposedly generated to produce the reply brief (before the 40% reduction) exceed one-third of the $46,618.11 that Gould initially requested in attorneys' fees to cover the entire 10 months of litigation. Indeed, more time was spent defending counsel's own fees than preparing Gould's motion for summary judgment. Gould's attorneys spent 6.07 hours preparing the opening brief in support of the motion for attorneys' fees. Still, Monarch's response raised specific issues to which Gould was required to respond. It is not unreasonable for the reply to have taken additional time, but not five times as long as it took to prepare the opening brief. The court will therefore only award 12 hours for Attorney Thomasson's work on the reply brief. For these reasons, the court concludes that the lodestar amount in this case is $43,601.11.

### 3. Adjustment of the Lodestar

Having concluded that the lodestar in this action is $43,601.11 based upon the hourly rates and number of hours worked, the court must next determine whether any additional adjustments should be made considering the limited success, complexity, or public interest served by the case. Gould's success, or more specifically, the success of her attorneys, was limited.

True, Monarch agreed to pay her a dollar more than the full $1,000 of statutory damages she could have recovered at trial. But in a single plaintiff non-frivolous FDCPA case, settlement for such an amount is the norm. The reason why is simple:

> Although Fair Debt cases may be factually different, they are also similar. Usually, the real dispute for the federal court to decide is one of attorney's fees. Liability is nearly always resolved by settlement or offer of judgment. Most FDCPA cases never reach the merits. This is a function of the FDCPA $1,000 maximum statutory penalty per case and the fact that few cases involve actual damages. Thus, it is not economically sensible for the parties to battle about the merits. Defendants commonly resort to serving an offer of judgment (or settlement offer) for the maximum statutory damages available, $1,000.00. Plaintiffs have no practical choice but to accept the offer of judgment, since pressing the case would be meaningless.

*Cohen v. Am. Credit Bureau, Inc.*, No. 10-5112, 2012 WL 847429, at *1 (D.N.J. Mar. 13, 2012). Even to file a Rule 12(b)(6) motion to dismiss would cost a defendant far more than $1,000 in attorneys' fees, and under the law of this circuit, such motions are generally not successful. *See Johnson v. Enhanced Recovery Co., LLC*, 961 F.3d 975, 980 (7th Cir. 2020) (noting that "complaints alleging misleading communications under § 1692e are rarely subject to dismissal for failure to state a claim because in this circuit, whether a communication is false, deceptive, or misleading under the FDCPA is a question of fact"). Considering the costs of defense and the possibility, however remote, that in the event the plaintiff prevails the defendant will have to pay those fees as well, it is not difficult to see why many debt collectors are willing to pay $1,000 in an attempt to put a stop to the accumulation of attorneys' fees by either side.

11

Given these operative forces, the settlement in this case is not a sign of great success. Two additional considerations lead the court to conclude that success here was limited. Gould initially requested but then withdrew her motion for class certification. Had she prevailed on behalf of a class consisting of all those who received the letter, both the amount of the recovery and the effect of settlement would have been far greater. Gould's attorneys also spent a significant amount of time in an effort to obtain an award substantially in excess of what the court finds reasonable. At least in these respects, her case met with limited success.

Turning to the next factor the court is to consider, the central issue in the case was not complex. Only three pages of the nine-page complaint were specific to Gould's claim; the remainder paraphrased pertinent provisions of the FDCPA and the essential elements of a Rule 23 class action. The crucial evidence was part of a single sentence in a one-page letter. *See, e.g.*, *Cooper v. Retrieval-Masters Creditors Bureau, Inc.*, 338 F. Supp. 3d 729, 736 (N.D. Ill. 2018) ("As RMCB correctly observes, this was a 'simple case.' Doc. 112 at 8. The complaint was not quite five pages long, Doc. 1; the crucial evidence was a single sentence in a single, one-page letter, Doc. 1-1 at 6; and the jury ultimately heard from just one witness, Cooper himself. Moreover, garden variety FDCPA cases like this one can be resolved largely through forms and existing boilerplate." (internal citation omitted)). After the motion to certify a class was withdrawn, the case settled for a dollar more than the maximum amount of statutory damages, an amount far less than the costs of litigation. Had it not been for the class action allegations, the case might well have settled even earlier.

Finally, concerning the public interest served by the case, the court is unable to discern any. In fact, it is unclear whether the court even had standing in the case, given that Gould has not alleged that she suffered any injury and sought only statutory damages. Although attorneys have

12

been bringing cases alleging bare violations of the FDCPA based on similar letters for years, the Seventh Circuit currently has several appeals pending before it raising that very issue in light of the Supreme Court's decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016). At least three of those appeals are from this court: *Larkin v. Finance Systems of Green Bay, Inc.*, No. 18-3582; *Sandri v. Finance Systems of Green Bay, Inc.*, No. 19-1557; and *Bazile v. Finance Systems of Green Bay, Inc.*, No. 19-1298. Whether or not the court determines that Article III standing exists, the plain fact is that Gould suffered no actual harm, financial or emotional, and the $1,001 that Monarch agreed to pay her was pure windfall.

Even assuming Article III standing does exist, it is difficult to discern what public benefit is derived from her case. As other courts have observed, there is a serious question whether such cases further the important purposes Congress intended the FDCPA to serve:

> The instant case, together with many of the FDCPA cases on my docket, suggests that the FDCPA is being privately enforced mostly on the hyper-technical margins of permissible collection activity. We have drifted quite far from the truly awful collection practices—threatening violence, disclosing a consumer's personal affairs to others, impersonating public officials—that prompted Congress to enact the FDCPA. *See* S. Rep. 95-382, at 2 (1977). We are no longer deterring collection companies from abusing, tricking, and misleading debtors into making payments that they do not have to or would not want to make if they had the relevant facts. The courts are to some extent simply burdening the collection industry with a continuing portfolio of litigation that potentially raises the cost of credit for all consumers.

*Islam v. Am. Recovery Serv. Inc.*, No. 17-CV-4228, 2017 WL 4990570, at *3 (E.D.N.Y. Oct. 31, 2017). At least in *Islam*, an actual violation of the FDCPA was shown. In this case, it appears from more recent decisions of the Seventh Circuit that no violation even occurred.

Recall that Gould's claim was that Monarch's letter was misleading because it stated her balance "as of" the date of the letter was $932.30. Gould alleged that the letter was materially misleading to the unsophisticated consumer because it created "a false sense of urgency that if the

13

debt is not promptly paid it will increase substantially and without notice. Compl. at ¶ 33. In *Koehn v. Delta Outsource Group, Inc.*, the court rejected the argument that a letter using the phrase "current balance" to indicate the amount of a "static" debt violated the FDCPA because it suggested it could increase over time. In so ruling, the court noted:

> Dunning letters can comply with the Fair Debt Collection Practices Act without answering all possible questions about the future. A lawyer's ability to identify a question that a dunning letter does not expressly answer ("Is it possible the balance might increase?") does not show the letter is misleading, even if a speculative guess to answer the question might be wrong.

939 F.3d 863, 865 (7th Cir. 2019). And more recently in *Degroot v. Client Services, Inc.*, the court rejected a similar argument that a letter showing the amount of the debt with a zero next to the entry for interest did not improperly suggest that interest would be charged:

> That interest and fees are no longer being added to one's account does not guarantee that they never will be, because there is no way—unless the addition is a legal or factual impossibility—to know what may happen in the future. That is why a statement in a dunning letter that relates only to the present reality and is completely silent as to the future generally does not run afoul of the FDCPA.

977 F.3d 656, - - - (7th Cir. 2020).

These cases strongly suggest that, had Monarch persisted in its defense, it would likely have prevailed. For the reasons set forth above, however, continuing to incur attorney's fees over a $1,000 claim was not a prudent business decision. Monarch chose to settle, but this does not mean the lawsuit furthered any public interest. In fact, as Judge Cogan suggested in *Islam*, such lawsuits may harm the public interest by raising the cost of credit for all consumers. 2017 WL 4990570, at *3.

This is not intended to cast aspersions on Gould's attorneys. They are zealously representing their clients in accordance with the rules and incentives that Congress and the courts have created in their enactment and interpretation of the FDCPA. The fact that counsel's work in

14

this case served their interests and those of their clients, rather than those of the public, may be a reason to not upwardly adjust the lodestar amount. But it is not a reason to reduce it. Private attorneys do not work for the public. They serve their clients and their fees should not be reduced because the result in their case does not further the public interest. Nevertheless, considering the limited success and the relatively straightforward nature of the case, I conclude that an additional reduction of 50% is appropriate. I conclude in the exercise of my discretion that a total fee of $21,800.56 is reasonable. This amount, plus costs in the amount of $1,503.21 shall be awarded.

## CONCLUSION

For the reasons stated above, the court finds that Gould's motion for attorneys' fees (Dkt. No. 42) is **GRANTED-IN-PART** and **DENIED-IN-PART**. Gould is awarded $21,800.56 in fees and $1,503.21 in costs. Gould's motion to restrict the First Primer Bank Declaration (Dkt. No. 56) is **GRANTED**. Exhibit 8 to the declaration of Andrew Thomasson (Dkt. No. 55-8) will remain restricted.

**SO ORDERED** at Green Bay, Wisconsin this <u>10th</u> day of November, 2020.

s/ William C. Griesbach
William C. Griesbach
United States District Judge
